**LeRoy WAGNER, Respondent,**

v.

**FARMER'S UNION CENTRAL EXCHANGE, et al., Respondents,**

**and**

**State Treasurer, James Lord, Custodian of the Special Compensation Fund, Relator.**

No. C9–82–681.

Supreme Court of Minnesota.

Feb. 4, 1983.

Hubert H. Humphrey III, Atty. Gen., William P. Donohue and Brad P. Engdahl, Spec. Asst. Atty. Gen., St. Paul, for relator.

Hansen, Dordell, Bradt, Odlaug & Bradt and William M. Bradt, St. Paul, for respondents.

LeRoy Wagner, pro se.

Peterson, Engberg & Peterson, Jay Y. Benanav and Roger A. Peterson, Minneapolis, for Minnesota AFL–CIO.

SCOTT, Justice.

This case arises from the assessment of a penalty by the Workers' Compensation Division of the Minnesota Department of

Labor and Industry (Division) against the National Farmer's Union Property and Casualty Company (the insurer) because of its delay in making workers' compensation payments. The penalty was assessed by the Division in favor of the Special Compensation Fund under Minn.Stat. § 176.221, subd. 3 (1982). The insurer and employer appealed to the Workers' Compensation Court of Appeals on the ground that the Division had incorrectly interpreted § 176.221, subd. 3. On April 20, 1982, the Court of Appeals issued an order reversing the penalty. We affirm the decision of the Court of Appeals to the extent that it reverses the penalty imposed by the Division, but modify its interpretation of the time within which an employer or insurer must begin payment of compensation benefits in order to avoid the 100% penalty imposed by § 176.221, subd. 3. We hold that the legislature intended that the 100% penalty for delay in making compensation payments be imposed if payments are not commenced within 30 days of notice to or knowledge by the employer of a compensable injury when no denial of liability or request for an extension of time has been filed.

The facts of this case are not in dispute. On November 11, 1981, the employee, Leroy Wagner, strained his back in the course of his employment for Farmer's Union Central Exchange. The employer was notified immediately and prepared a First Report of Injury. The insurer received the report on November 13, 1981.

On December 10, 1981, the insurer paid the employee temporary total disability for the 2.4 weeks he was absent from work as a result of his injury. His compensation rate was $267 per week; thus, the total payment to the employee was $640.80.

At the same time it made payment to the employee, the insurer filed a Notice of Intention to Discontinue Compensation Benefits and a copy of the First Report of Injury with the Division.

Based on these documents, the Division determined that the payment was two weeks late under Minn.Stat. § 176.221 and issued an order assessing penalties under Minn.Stat. § 176.225, subd. 5 (1982), and

Minn.Stat. § 176.221, subd. 3. The first penalty, which is not at issue in this case, is equal to 10% of the total benefits to which the employee is entitled and is paid directly to the employee. The second penalty is equal to 100% of the total benefits and is paid to the Special Compensation Fund.

The issues before this court are:

(1) Whether it was the intention of the legislature, in amending Minn.Stat. § 176.-221, subd. 3, to give the employer a longer period after a compensable injury is reported to him in which to begin payment before incurring liability for the 100% penalty provided by that section when no denial of liability or request for an extension of time has been filed.

(2) Whether Minn.Stat. § 176.221 as applied in this case provides due process to the employer and insurer.

1. In 1981 the Minnesota Legislature modified the provisions of Minn.Stat. § 176.221. The purpose of the modifications was to decrease the time for payment of benefits to injured workers. Minn.Stat. § 176.001 (1982). It was hoped that decreasing the time within which payments are made would also result in less litigation and, ultimately, lower insurance rates.

Minn.Stat. § 176.221, subd. 3, provides a 100% penalty for delay in performing certain acts. The question presented on this appeal is how many days must the employer or insurer be allowed to perform the required act or acts before the penalty is imposed. There are three possible interpretations of the length of time allowed by § 176.221, subd. 3: 14 days; 30 days; or 44 days. For the reasons that follow, we hold that it was the intention of the legislature that the 100% penalty be imposed if the required act or acts were not performed within 30 days of notice to or knowledge by the employer of a compensable injury.

Prior to the 1981 amendments, Minn.Stat. § 176.221, subd. 3 (1980), read as follows:

Where an employer or insurer fails to begin payment of compensation, charges for treatment under section 176.135 or retraining expenses under 176.102, subdivision 9, or to file a denial of liability, or to request an extension of time *within*

*the 30 day period referred to in subdivision 1,* he shall pay to the special compensation fund an amount equal to the total amount of compensation to which the employee is entitled because of the injury. In addition, each day subsequent to the end of the 30 day period and until a compensation payment is made to the injured employee, the person responsible for payment of compensation shall pay to the special compensation fund an amount equal to the total compensation to which injured employee is entitled.

(Emphasis added.) Under this statute the 100% penalty was imposed if the employer or insurer did not begin payment, deny liability, or request an extension within the 30-day period described in Minn.Stat. § 176.221, subd. 1 (1980),[1] which is within 30 days of the date of notice to or knowledge by the employer of a compensable injury.

Minn.Stat. § 176.221, subd. 3 (1982), now provides:

Where an employer or insurer fails to begin payment of compensation, charges for treatment under section 176.135 or retraining expenses under 176.102, subdivision 9, or to file a denial of liability, or to request an extension of time *within 30 days after the date on which the first payment was due,* he shall pay to the special compensation fund an amount equal to the total amount of compensation to which the employee is entitled because of the injury. In addition, each day subsequent to the end of the period and until a compensation payment is made to the injured employee, the person responsible for payment of compensation shall pay to the special compensation fund an amount equal to the total compensation to which the injured employee is entitled.

(Emphasis added.) Under § 176.221, subd. 3, as amended, the 100% penalty is imposed if the employer or insurer does not do the required act or acts within 30 days after the first compensation payment was *due.* The first compensation payment is *due* when the employer receives notice of or has knowledge of the injury; thus, the penalty will be imposed, as it was prior to the 1981 amendments, for failure to perform the required acts or acts within 30 days of notice to or knowledge of injury by the employer.

Retention of the 30-day period in § 176.-221, subd. 3, is consistent with the intention of the legislature and other sections of the Workers' Compensation Act. Nowhere do we find evidence of a legislative intent to change § 176.221, subd. 3. The primary author of the 1981 amendments, Representative Wayne Simoneau, explained during floor debate that the purpose of the changes to § 176.221 was to reduce the period in which a workers' compensation claim went unpaid. He stated:

Section 94 [Section 96 in the final engrossment]. Uncontested payments to begin fourteen days from the notice of injury. Current practice is thirty days. We feel that's too long. Lots of employees have gone the full thirty days without receiving a check, have visited with an attorney, and suddenly, what may be simply a week or two out of work * * * winds up a case that's being litigated for permanent partial.

House floor debates, May 6, 1981, tape revolution No. 1102. The 100% penalty of § 176.221, subd. 3, is not mentioned. The legislative intention to reduce the time within which compensation payments must commence was accomplished by amending § 176.221, subd. 1,[2] to provide that pay-

1. Minn.Stat. § 176.221, subd. 1 (1980), read as follows:

Within 30 days from the date of notice to or knowledge by the employer of an injury compensable under the chapter, and unless within that 30 day period the employer or the insurer files with the commissioner of the department of labor and industry a denial of liability or a request for an extension of time within which to determine liability, the person responsible for payment of compensation, charges for treatment under section 176.135 or retraining

expenses under 176.102, subdivision 9 shall begin payment of compensation or charges for treatment.

2. Minn.Stat. § 176.221, subd. 1 (1982), provides:

Within 14 days of notice to or knowledge by the employer of an injury compensable under this chapter the payment of compensation due pursuant to section 176.101, subdivision 1, shall commence. Commencement of payment by an employer or insurer does not waive any rights

ments of compensation shall commence within *14 days* of employer notice or knowledge of the injury, rather than the previous 30 days, and, by adding Minn.Stat. § 176.-225, subd. 5 (1982),[3] which provided a 10% penalty, payable to the injured employee, for inexcusable delay in making payments.

A close look at § 176.221, subd. 3, reveals that the legislature, in amending the statute, removed the previous reference to the period referred to in subdivision 1. This step was necessary in order that subdivision 3 remain unchanged despite the reduction in time for commencement of payment in subdivision 1 from 30 to 14 days. Subdivision 3 now stands on its own. There is no need to refer to subdivision 1 in order to determine the time period for imposition of the 100% penalty.

A legislative intent that compensation payments are due at the time when the employer has notice or knowledge of the compensable injury is evidenced by the first sentence of § 176.221, subd. 1. It states that "[w]ithin 14 days of notice to or knowledge by the employer of an injury compensable under this chapter the payment of compensation *due* pursuant to section 176.-101, subdivision 1, *shall commence.*" (Emphasis added.) This new language indicates that compensation was due at some time *prior to* the time when payment must be commenced.

■ That compensation is *due* some time prior to the time at which payments must *commence* is further evidenced by Minn.

Stat. § 176.141 (1982), which states in relevant part:

Unless the employer has actual knowledge of the occurrence of the injury or unless the injured worker, or a dependent or someone in behalf of either, gives written notice thereof to the employer within 14 days after the occurrence of the injury, *then no compensation shall be due until the notice is given or knowledge obtained.*

(Emphasis added.) This statute was in effect when Minn.Stat. § 176.221, subd. 1, allowed 30 days for commencement of payment. It clearly indicates that compensation is *due* prior to the date on which payment must *commence.* Payment of compensation is thus *due* when the employer has notice or knowledge of a compensable injury, but need not *commence* until 14 days therefrom. Therefore, under § 176.-221, subd. 3, the 100% penalty is imposed if the employer or insurer fails to perform the required act or acts within *30 days* of notice to or knowledge by the employer of an injury compensable under the Worker's Compensation Act.

In deciding that Minn.Stat. § 176.221, subd. 3, allows 30 days prior to imposition of the 100% penalty, we reject the 14- and 44-day alternatives. The insurer's position that subdivision 3 allows 44 days prior to imposition of the 100% penalty flies in the face of a clear legislative intent to reduce the time within which compensation payments must be commenced. Furthermore, the legislature specifically deleted any ref-

to any defense the employer may have on any claim or incident either with respect to the compensability of the claim under chapter 176 or the amount of the compensation due. Where there are multiple employers, the first employer shall pay, unless it is shown that the injury has arisen out of employment with the second or subsequent employer. When the employer determines that the disability is not a result of a personal injury, payment of compensation may be discontinued upon notice of discontinuance pursuant to section 176.241. Upon the determination, payments made may be recovered by the employer if the commissioner finds that the employee's claim of work related disability was not made in good faith.

**3.** Minn.Stat. § 176.225, subd. 5 (1982), provides:

Where the employer is guilty of inexcusable delay in making payments, the payments which are found to be delayed shall be increased by 10 percent. Withholding amounts unquestionably due because the injured employee refuses to execute a release of his right to claim further benefits will be regarded as inexcusable delay in the making of compensation payments. If any sum ordered by the department to be paid is not paid when due, and no appeal of the order is made, the sum shall bear interest at the rate of 12 percent per annum. Any penalties paid pursuant to this section shall not be considered as a loss or expense item for purposes of a petition for a rate increase made pursuant to chapter 79.

erence in § 176.221, subd. 3, to the 14-day period in § 176.221, subd. 1, indicating that it wanted the 30-day period in subdivision 3 to stand alone rather than be in addition to the 14-day period in subdivision 1.

Relator claims that the time period for imposition of the 100% penalty is 14 days. It contends that the phrase "within 30 days after the date on which the first payment was due" in § 176.221, subd. 3, refers only to the time limit for requesting an extension and not to the period within which payment must begin or a denial be filed. This contention must fail for several reasons.

First, the relator's interpretation of the statute would allow a penalty to be assessed for failure to commence payment or deny liability within the 14-day period. Then, after the penalty is imposed, it can be avoided by filing an extension request within 30 days after the date on which the first payment was due. This is not a logical result.

Second, if the relator's assertion is accepted that the phrase "within 30 days after the date on which the first payment was due" refers only to the time within which an extension must be requested, then subdivision 3 provides a penalty for failure to begin payment of compensation with no provision for when the penalty is to be imposed. Read as urged by relator, the statute would state: "Where an employer or insurer fails to begin payment of compensation * * * he shall pay to the special compensation fund an amount equal to the total amount of compensation to which the employee is entitled because of the injury." Failure to begin payment of compensation must be modified by a specified time period in order to make sense. The only time period within subdivision 3 is 30 days after the date on which the first payment was due.

Third, prior to the 1981 amendments, the phrase "within the 30 day period referred to in subdivision 1," in § 176.221, subd. 3 (1980), when read in conjunction with subdivision 1, clearly modified all of the clauses which preceded it, and did not just designate the time within which an extension

must be requested. There is no reason to suppose that the legislature, having left this language largely intact, now intended the phrase "within 30 days" to modify only the clause referring to a request for an extension of time.

Our decision that § 176.221, subd. 3, allows 30 days in which to commence payment of compensation benefits prior to the imposition of the 100% penalty makes it unnecessary to consider the constitutional issue. The insurer commenced payment of compensation benefits on the 29th day following employer notice of the injury. The 100% penalty, therefore, cannot be imposed against the insurer.

Affirmed, as modified.